Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Katherine Tuohy (SBN 353967)
Katherine@ SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S, Suite 308
San Diego, CA 92108
P: (866) 219-3343

Daniel Shay (SBN 250548)
Dan@ShayLegal.com
Harrison Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
P: 619-222-7429

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Cearra Free, individually and for all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GoRaw LLC dba Steve's Real Food,<br><br>Defendant. | Case No: 3:26-cv-03704-JO-JLB<br><br>FIRST AMENDED CLASS ACTION<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CEARRA FREE ("Plaintiff"), by and through her attorneys, brings this class action on behalf of herself and the Classes, as defined below, against Defendant GORAW LLC doing business as STEVE'S REAL FOOD ("Defendant"). The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel and the findings of the U.S. Food and Drug Administration ("FDA"), and are as follows:

## INTRODUCTION

1. This class action addresses a serious breach of consumer trust and a life-threatening nutritional defect in Defendant's product line. Defendant manufactures, markets, distributes, and sells a line of premium raw cat food under the brand name Quest, marketed through its trade name Steve's Real Food. Defendant's Quest cat food products are labeled and sold as "complete and balanced" diets formulated to meet the nutritional levels established by the Association of American Feed Control Officials ("AAFCO") Cat Food Nutrient Profiles for All Life Stages. Consumers pay a price premium for Quest Cat Food specifically because of these representations. Quest products are priced significantly higher than conventional cat food products, with consumers paying approximately $100–$115 for a four-to-six week supply, based on the reasonable expectation that the product delivers superior, scientifically validated nutrition. Quest freeze-dried cat food retails for approximately $22 to $25 per 10-ounce bag, a substantial premium over conventional cat food. In fact, FDA laboratory testing of eight lots of Quest Cat Food has confirmed that the products contain extremely low or no thiamine (Vitamin B1), a nutrient that is essential to feline health and which cats require in greater quantities than most other mammals

2. Thiamine deficiency in cats is a serious and potentially fatal condition. Early signs include decreased appetite, salivation, vomiting, failure to grow, and weight loss. As the deficiency progresses, cats may suffer severe neurological symptoms including cervical ventroflexion (involuntary downward bending of

the neck), mental dullness, vision changes, loss of coordination, circling, falling, and seizures. Left untreated, thiamine deficiency is deadly.

3. The FDA first became aware of the defect after receiving a report from a veterinary neurologist describing severe thiamine deficiency symptoms in a cat consuming one of the affected Quest lots. Following additional consumer complaints of cat illness and death associated with Quest Cat Food, the FDA tested eight lots and found that all eight contained thiamine levels far below the AAFCO minimum of 5.6 mg/kg, ranging from nondetectable to approximately 15% of the required minimum. Despite the FDA's recommendation that Defendant recall all eight lots, Defendant formally recalled only three. Defendant did announce a voluntary stop-sale of all Quest products at all retailers, but the FDA subsequently noted that Defendant had not provided evidence demonstrating that the remaining product lots had been removed from the market or that consumers had been adequately notified of the risks.

4. Plaintiff's cat, Whimsey, suffered acute thiamine deficiency caused by Quest Cat Food, requiring emergency veterinary hospitalization and intensive care. Plaintiff brings this action individually and on behalf of all others similarly situated who purchased any of the eight specific lots of Quest Cat Food products identified by the FDA laboratory testing, to hold Defendant accountable for selling defective, mislabeled, and adulterated products, and to obtain restitution, damages, and injunctive relief.

## PARTIES

5. Plaintiff CEARRA FREE is over the age of 18 years old and at all times relevant herein was a resident of San Diego, California.

6. Defendant GoRaw LLC, doing business as Steve's Real Food ("Defendant"), is a limited liability company organized under the laws of the State of Utah, with its principal place of business in Cottonwood Heights, Utah. Defendant manufactures, distributes, and sells pet food products, including the Quest Cat

Food line, both directly through its website and through third-party distributors, wholesalers, and retailers throughout the United States.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Classes consist of more than 100 members, and minimal diversity exists. Plaintiff is a citizen of California; Defendant is organized under Utah law with its principal place of business in Utah, satisfying the minimal diversity requirement of CAFA.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides within this judicial district, a substantial part of the events giving rise to the claims occurred here, and Defendant conducts business in this district and derives substantial revenue from its activities here.

## FACTUAL ALLEGATIONS

### A. Defendant's Quest Cat Food Line and Nutritional Representations

10. Defendant manufactures, distributes, and sells a line of raw cat food under the Quest brand, marketed through its trade name Steve's Real Food. Quest is Defendant's product line, formulated as a 95:5 'Prey Model' diet and sold in recipe varieties (Chicken, Pork, Beef, and White Fish); the specific products are identified on their labels by both the 'Quest' line name and the 'Prey Model' recipe name, and are referred to herein collectively as the 'Quest Products.' Quest Cat Food is sold in two formats: freeze-dried nuggets in 10-ounce beige zip-top bags, and frozen nuggets in 2-pound beige zip-top bags. Product varieties

include Chicken, Pork, Beef, and White Fish recipes. The products are sold online and through retail stores distributed nationwide.

11. Defendant labels Quest Cat Food as "complete and balanced" nutrition for cats, including a nutritional adequacy statement that the food is "formulated to meet the nutritional levels established by AAFCO Cat Food Nutrient Profiles for All Life Stages." Defendant charges a substantial price premium for Quest Cat Food relative to conventional cat food products, approximately $100–$115 per four-to-six week supply trading specifically on the quality, safety, and nutritional adequacy these representations convey to consumers. Consumers, including Plaintiff, reasonably relied on these representations in selecting and purchasing Quest Cat Food as a sole or primary diet for their cats.

12. Thiamine (Vitamin B1) is an essential nutrient for cats. Cats require approximately four times more thiamine in their diets than dogs. The AAFCO Cat Food Nutrient Profile establishes a minimum thiamine level of 5.6 mg/kg of food (on a dry matter basis) as the threshold for feline nutritional adequacy. A product representing itself as "complete and balanced" for cats is required to meet this standard.

**B. FDA Testing Reveals Dangerously Low or Absent Thiamine in Eight Lots**

13. The FDA first became aware of the thiamine deficiency issue after receiving a complaint from a veterinary neurologist reporting severe thiamine deficiency in a cat that had consumed one of Defendant's Quest Cat Food lots. FDA testing confirmed the product contained extremely low thiamine. Following additional consumer complaints of cat illness linked to Quest Cat Food, the FDA tested additional lots and found that all eight lots tested contained thiamine levels well below the AAFCO minimum of 5.6 mg/kg. The FDA's findings are summarized as follows:

***Thiamine Levels in Steve's Real Food Products Tested by FDA***

| Quest Cat Food Product | Lot Code | Best By Date | Thiamine Level | % of AAFCO Minimum (5.6 mg/kg) |
|---|---|---|---|---|
| Prey Model Chicken Recipe Freeze Dried Nuggets | C25288 | 10/15/27 | 0.22 mg/kg | 3.9% |
| Prey Model Chicken Diet Bite Size Nuggets, frozen | MCD25350 | 06/16/27 | None detected | 0% |
| Prey Model Chicken Diet Bite Size Nuggets, frozen | MCC25321 | 05/17/27 | None detected | 0% |
| Prey Model Pork Recipe Freeze Dried Nuggets | C25358 | 12/24/27 | < 0.1 mg/kg | < 1.8% |
| Prey Model Beef Recipe Freeze Dried Nuggets | C25318 | 11/14/27 | < 0.1 mg/kg | < 1.8% |
| Prey Model White Fish Freeze Dried Nuggets | C25337 | 12/03/27 | 0.85 mg/kg | 15.2% |
| Prey Model Chicken Recipe Freeze Dried Nuggets | C25336 | 12/02/27 | 0.21 mg/kg | 3.75% |
| Prey Model Pork Recipe Freeze Dried Nuggets | C25321 | 11/17/27 | 0.32 mg/kg | 5.7% |

*Note: AAFCO minimum thiamine level for cat food is 5.6 mg/kg (dry matter basis). All tested products fell far below this standard.*

14. Despite Defendant's labeling of Quest Cat Food as nutritionally adequate for all life stages, none of the eight tested lots approached the AAFCO minimum thiamine requirement. Seven of the eight tested lots contained less than 6% of the required thiamine level — two of them with no detectable thiamine at all — and the eighth contained only approximately 15% of the AAFCO minimum.

**C. Defendant's Inadequate Recall and Stop-Sale**

15. On February 17, 2026, Defendant issued a voluntary recall of a single lot of Quest Cat Food Chicken Recipe Freeze Dried Nuggets (Lot Code C25288, Best By Date 10/15/2027). Defendant’s recall announcement of that date stated that

the recalled product had been distributed through retail stores in Colorado, Utah, Washington, Oregon, Pennsylvania, Rhode Island, Michigan, California, Texas, and Illinois.

16. On February 26, 2026, Defendant expanded its recall to include two additional lots of Quest Cat Food Chicken Recipe Frozen Diet (Lot Codes MCD25350 and MCC25321). Defendant's recall announcement of that date stated that the expanded recalled products had been distributed through retail stores in California, Colorado, Florida, Georgia, Idaho, Illinois, Michigan, Minnesota, Montana, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Washington, and Wisconsin.

17. The formally recalled products consist of: (1) Quest Cat Food Chicken Recipe Freeze Dried Nuggets, 10 oz. Bag, Lot Code C25288, UPC 6-91730-18103-1, Best By Date 10/15/2027; (2) Quest Cat Food Chicken Recipe Frozen Diet, 2 lb. Bag, Lot Code MCD25350, UPC 6-91730-17104-9, Best By Date 6/16/2027; and (3) Quest Cat Food Chicken Recipe Frozen Diet, 2 lb. Bag, Lot Code MCC25321, UPC 6-91730-17104-9, Best By Date 5/17/2027.

18. Despite the FDA's recommendation that Defendant recall all eight tested lots, Defendant formally recalled only three. On March 13, 2026, the FDA issued a public advisory noting that Defendant had only recalled three lots' and that, although Defendant had publicly stated it was stopping the sale of all Quest Cat Food, Defendant had 'not provided evidence to show that the remaining product lots have been removed from the marketplace and customers have been adequately notified about which products may be affected and the risks the products pose.'

19. Defendant's voluntary stop-sale was not a formal FDA enforcement order or mandatory recall. In its March 13, 2026 advisory, the FDA stated that Defendant "has not provided evidence to show that the remaining product lots have been removed from the marketplace and customers have been adequately notified

about which products may be affected and the risks the products pose." On June 8, 2026, Defendant further expanded its recall to add a lot of Steve's Real Food Chicken Recipe Freeze Dried, 1.25 lb. bag (Lot Code C26022, Best By Date 1/22/2028), which Defendant's announcement described as a cat and dog food. That lot was not among the eight lots the FDA tested.

**D. Plaintiff's Experience and Her Cat's Hospitalization**

20. Beginning in September 2023, Plaintiff regularly purchased Quest Cat Food products, including Quest Cat Food Prey Model White Fish Freeze Dried Nuggets and Quest Cat Food Prey Model Pork Recipe Freeze Dried Nuggets, as a complete and sole-source diet for her cat Whimsey. Plaintiff purchased these products in reasonable reliance on Defendant's representations that they were nutritionally complete and balanced, meeting AAFCO Cat Food Nutrient Profiles for All Life Stages. Plaintiff paid a price premium for Quest Cat Food based on these representations, approximately $100–$115 for a four-to-six week supply, compared to conventional cat food products which may be processed or do not make equivalent nutritional adequacy claims.

21. Plaintiff regularly purchased and fed Whimsey two of the eight FDA-tested lots: Quest Cat Food Prey Model White Fish Freeze Dried Nuggets (Lot Code C25337, confirmed by FDA testing to contain 0.85 mg/kg thiamine — approximately 15% of the AAFCO minimum) and Quest Cat Food Prey Model Pork Recipe Freeze Dried Nuggets (Lot Code C25321, confirmed by FDA testing to contain 0.32 mg/kg thiamine — approximately 5.7% of the AAFCO minimum).

22. Beginning in mid-January 2026, Whimsey began exhibiting symptoms consistent with thiamine deficiency. Initial symptoms included intermittent vomiting and nausea, occasional clumsiness and missteps consistent with vertigo, and gradually worsening lethargy and decreased appetite. Plaintiff was unaware that these symptoms were caused by thiamine deficiency in

Whimsey's food, as Plaintiff had purchased the product as nutritionally complete and had no reason to suspect otherwise.

23. Whimsey's condition deteriorated significantly during the period of January 26–28, 2026. Her appetite declined dramatically on January 26–27, and she stopped eating entirely the night of January 27. By January 28, 2026, Whimsey exhibited acute ataxia, severe neurological imbalances, involuntary body movements, spinal curling, and uncontrolled flipping, symptoms consistent with a possible seizure event. Her pupils were dilated. Plaintiff immediately sought emergency veterinary care.

24. On January 28, 2026, Plaintiff took Whimsey to Cabrillo Pet Hospital in San Diego for initial evaluation. Given the severity of Whimsey's neurological presentation, Plaintiff was directed to rush Whimsey to VCA Animal Specialty Group that same evening for emergency care and hospitalization.

25. Whimsey was admitted to VCA Animal Specialty Group on January 28, 2026, and remained hospitalized through January 30, 2026. Her treating veterinarians determined that Whimsey was suffering from acute thiamine deficiency consistent with a nutritionally inadequate diet. Treatment included thiamine supplementation, intravenous fluids, neurological monitoring, and supportive care. Plaintiff's veterinary neurologist independently tested Whimsey's blood sample and the Quest White Fish food that Whimsey had been consuming (stored in a glass jar and dropped off for testing February 13, 2026). All testing confirmed the absence of thiamine in both the food and Whimsey's bloodstream.

26. Plaintiff incurred the following veterinary and related out-of-pocket expenses as a direct result of Whimsey's thiamine deficiency caused by Defendant's products:

27. Cabrillo Pet Hospital (January 28, 2026): $449.19, partially offset by pet insurance reimbursement of $159.36, leaving an out-of-pocket expense of $289.83;

28. VCA Animal Specialty Group (January 28–30, 2026): $8,240.66, partially offset by pet insurance reimbursement of $4,840.65, leaving an out-of-pocket expense of $3,400.01. Plaintiff's pet insurance coverage is exhausted for the year and will not renew until December 2026;

29. Furbo pet camera subscription to monitor Whimsey remotely while at work: $95.91;

30. Automatic pet feeder to ensure consistent feeding: $80.80;

31. Canned food and Vitamin B supplement on discharge: $14.99;

32. Increased transportation costs from returning home at lunch to check on Whimsey: approximately $60 per month above baseline (average $60/month increase over three-month period); and

33. Increased food costs: prior to the incident, Plaintiff spent approximately $100–$115 per four-to-six week supply on Quest Cat Food. Following Whimsey's hospitalization, Plaintiff switched to alternative premium cat foods: $200.41 for five-to-six weeks of Orijen canned food (February/March 2026) and $326.89 for approximately eleven weeks of Just Food for Dogs Cat Food. Going forward, Plaintiff will spend approximately $340 per eight weeks on Just Food for Dogs Cat Food, representing an ongoing premium attributable to Defendant's conduct.

34. As a direct result of Defendant's defective products, Plaintiff has incurred total out-of-pocket damages of approximately $3,881.53 in veterinary expenses (net of insurance), plus the purchase price of the defective Quest Cat Food products, plus ongoing increased food costs, plus other incidental expenses itemized above.

35. Whimsey has not made a full recovery. While she has regained weight and energy, she continues to exhibit occasional clumsiness and unexplained tripping, symptoms that are more frequent when Vitamin B supplementation is reduced or when she goes too long between meals. Plaintiff has suffered and continues to suffer the emotional distress of witnessing her companion animal's ongoing neurological effects. Plaintiff may purchase Quest Cat Food again in the future if she could be confident the products actually meet the AAFCO 'complete and balanced' standard Defendant represents on the label, but she cannot presently rely on that labeling; absent injunctive relief she remains unable to determine whether the Quest Products are truthfully labeled.

36. Plaintiff's experience is typical of the Class. Numerous cat owners purchased and fed Quest Cat Food to their cats in reasonable reliance on Defendant's representations, and many cats consuming the FDA-tested lots have suffered serious harm from thiamine deficiency. However, the majority of Class Members whose cats did not fall ill share with Plaintiff the common economic injury of having paid a price premium for a product that did not and could not deliver the nutritional adequacy Defendant represented, regardless of whether their specific cat exhibited clinical symptoms.

**E. Plaintiff’s § 1750 et seq Notice and Defendant’s Response**

37. On June 23, 2026, Plaintiff sent a Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., notice and demand by certified mail, return receipt requested. In this letter, Plaintiff gave notice of Defendant's violations under the CLRA, specifically Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), and demanded relief individually and for a class of consumers, expressly invoking Cal. Civ. Code § 1782(c).

38. On June 24, 2026, Plaintiff commenced this action. The Tenth Cause of Action under the CLRA was brought at the outset solely for injunctive relief pursuant to Cal. Civ. Code § 1782(d).

39. On June 29, 2026, Defendant received Plaintiff's notice and demand.

40. On July 28, 2026, Defendant, through counsel, served a response to Plaintiff's CLRA notice and demand regarding Plaintiff's individual claims only. Defendant did not address the claims of the class.

41. Defendant's offer was inadequate. It did not satisfy Defendant's obligation to adequately correct the issues outlined individually as to Plaintiff, and it did not resolve Plaintiff's demand as to the class.

42. Later that same day, Plaintiff, through counsel, identified the deficiencies of Defendant's offer.

43. On July 29, 2026, the thirty (30) day period for Defendant to make any correction expired.

44. Defendant did not make an adequate correction or offer an adequate remedy before this thirty (30) day period expired. Defendant made only one offer during that period and did not increase or supplement it on or before July 29, 2026.

45. Under Cal. Civ. Code § 1782(d), a plaintiff who commenced an action for injunctive relief may amend the complaint without leave of court to include a claim for damages not less than thirty (30) days after commencement of that action and after compliance with § 1782(a). Plaintiff commenced this action on June 24, 2026, and thirty (30) days elapsed on July 24, 2026. Plaintiff complied with § 1782(a) by serving the notice and demand described above, and the thirty (30) day period following Defendant's receipt expired on July 29, 2026. Plaintiff amends to add such claims for damages.

## CLASS DEFINITIONS AND ALLEGATIONS

46. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following Classes:

> **Nationwide Class:** All persons in the United States who purchased, for personal, household, or consumer use and not for resale, any of the following lots of Defendant's pet food products: Quest Cat Food Prey Model Chicken Recipe Freeze Dried Nuggets, Lot Codes C25288 and C25336; Quest Cat Food Prey Model Chicken Diet Bite Size Nuggets (frozen), Lot Codes MCD25350 and MCC25321; Quest Cat Food Prey Model Pork Recipe Freeze Dried Nuggets, Lot Codes C25358 and C25321; Quest Cat Food Prey Model Beef Recipe Freeze Dried Nuggets, Lot Code C25318; Quest Cat Food Prey Model White Fish Freeze Dried Nuggets, Lot Code C25337; and Steve's Real Food Chicken Recipe Freeze Dried, Lot Code C26022. The first eight lots identified above are the lots FDA laboratory testing identified as containing thiamine below the AAFCO minimum of 5.6 mg/kg; the ninth is the lot Defendant recalled on June 8, 2026.
>
> **California Subclass:** All members of the Nationwide Class who purchased in the State of California.
>
> **Veterinary Harm Subclass:** All members of the Nationwide Class whose cat or dog, after consuming any of the lots identified in the Nationwide Class definition, received veterinary examination, diagnosis, or treatment for clinical signs consistent with thiamine deficiency.

47. Excluded from the Class are Defendant, its officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendant has a controlling interest, and any Judge assigned to this case and their immediate families.

48. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

49. Every member of the Nationwide Class and California Subclass paid a price premium for Quest Cat Food based specifically on Defendant's representations that the products were "complete and balanced" and met AAFCO Cat Food

Nutrient Profiles. Quest Cat Food is priced significantly above conventional cat food, approximately $100–$115 per four-to-six week supply, and consumers, including Plaintiff, paid this premium price because of the AAFCO nutritional adequacy representations on the label. Had the products not been labeled as meeting AAFCO standards, consumers would not have paid the premium price charged or would not have purchased the products at all.

50. The price premium attributable to the "complete and balanced" / AAFCO representation is a common question susceptible to common proof through expert economic analysis and market data. The difference between the price paid and the fair market value of a cat food product that does not meet AAFCO standards constitutes economic injury shared by every Class member who purchased any of the eight FDA-tested lots, regardless of whether their individual cat exhibited clinical thiamine deficiency symptoms.

51. Plaintiff's damages include both (a) the price premium damages common to all Class members, and (b) additional consequential damages, including veterinary expenses, related out-of-pocket costs, and emotional distress, that are unique to Plaintiff and members of the Veterinary Harm Subclass. Plaintiff's individual consequential damages do not defeat class certification because: (i) the common price premium damages predominate for the larger Classes; (ii) individual damages for the Veterinary Harm Subclass can be established through individual proof at a later stage or through a claims process without defeating predominance; and (iii) Plaintiff is typical of both the larger Class (common price premium injury) and the Veterinary Harm Subclass (consequential harm). Rule 23(b)(3) certification is appropriate because common questions, including the existence of the defect, the false labeling, and the price premium attributable to the AAFCO representation, predominate over any individual damages questions.

52. Thus, this action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

53. **Numerosity**: Members of the Classes are so numerous that joinder of all Members is impracticable. Although the exact number of Class Members is unknown to Plaintiff at this time, the eight FDA-tested lots were distributed across at least 20 states through retail stores and online channels. Plaintiff is informed and believes that the number is in the thousands, if not tens of thousands, based on the widespread availability of Quest Cat Food products in retail outlets throughout the United States, including through online platforms, and the 20-state distribution of the recalled products.

54. **Common Questions Predominate**: There are questions of law and fact common to the Classes that predominate over any individual issues, including but not limited to:

a. Whether Defendant's Quest Cat Food products labeled as "complete and balanced" complied with AAFCO Cat Food Nutrient Profiles for thiamine content;

b. Whether all eight FDA-tested lots contained thiamine below the AAFCO minimum;

c. Whether Defendant's "complete and balanced" labeling was false and misleading;

d. Whether Defendant knew or should have known of the thiamine deficiency before the recall;

e. Whether Defendant's labeling, advertising, and marketing of Quest Cat Food as nutritionally complete and balanced was false, misleading, or deceptive;

f. Whether Class members paid a price premium attributable to the AAFCO representation;

g. Whether Defendant's failure to adequately notify consumers and remove all defective lots from commerce following the discovery of the thiamine deficiency constitutes a breach of duty;

h. Whether Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's practices;

i. Whether Defendant has been unjustly enriched by the sale of the defective Quest Cat Food products;

j. Whether Plaintiff and Class Members are entitled to restitution, disgorgement, compensatory damages, or other relief; and

k. Whether injunctive relief is necessary to prevent Defendant from continuing to manufacture, distribute, or sell nutritionally deficient cat food products.

55. **Typicality**: Plaintiff's claims are typical of the Classes. Plaintiff purchased two of the eight FDA-tested lots, the White Fish and Pork lots, in reliance on Defendant's nutritional adequacy representations, paid a price premium, and suffered economic injury common to all Class members, as well as additional injury through Whimsey's hospitalization that is typical of the Veterinary Harm Subclass. Defendant's unlawful conduct is the same regardless of which specific lot was purchased.

56. **Adequacy**: Plaintiff is an adequate representative of the Classes she seeks to represent because she is committed to seeking justice for those affected and her interests do not conflict with the interests of the Members of the Classes. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

57. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a. Individual lawsuits would be impractical given the number of Class Members and the relatively small individual damages, while a class action ensures

centralized accountability for Defendant's actions and provides relief to those it has wronged;

b. Because of the relatively small size of individual Class Members' claims, it is likely that few Class Members could afford to seek individual legal redress for Defendant's misconduct; and

c. Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would generate.

## FIRST CAUSE OF ACTION

**(Strict Products Liability – Manufacturing Defect)**

**(On Behalf of Plaintiff and the Nationwide Class)**

58. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

59. Defendant is engaged in the business of manufacturing, distributing, and selling Quest Cat Food products for consumption by cats as a complete and balanced diet.

60. The eight FDA-tested lots of Quest Cat Food identified in the class definition were defective in manufacture in that they deviated from Defendant's intended design and from the AAFCO nutritional standards Defendant was required to meet, specifically by containing thiamine at levels ranging from 15% of the AAFCO minimum of 5.6 mg/kg, to no detectable thiamine at all.

61. The manufacturing defect rendered the Quest Cat Food products unreasonably dangerous for their intended use as a sole-source diet for cats, as cats consuming deficient products were at serious risk of thiamine deficiency, neurological injury, and death.

62. Plaintiff and Class Members used the Quest Cat Food products in the manner intended and reasonably expected by Defendant—as a complete and balanced daily diet for their cats.

63. As a direct and proximate result of the manufacturing defect, Plaintiff suffered economic injury including the purchase price paid for the defective product and emergency veterinary expenses totaling approximately $3,881.53 (net of insurance), plus additional out-of-pocket costs as itemized above. Class members suffered economic injury in the form of the purchase price paid for the defective products and, where applicable, additional veterinary expenses. All Class members suffered the loss of the price premium paid for products that did not deliver the nutritional adequacy represented.

**SECOND CAUSE OF ACTION**

**(Strict Products Liability – Failure to Warn)**

**(On Behalf of Plaintiff and the Nationwide Class)**

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65. Defendant knew or should have known that Quest Cat Food products containing inadequate thiamine posed a serious health risk to cats, including the risk of neurological injury and death.

66. Defendant failed to provide adequate warning to Plaintiff and Class Members that the FDA-tested lots did not contain adequate thiamine and were not safe for use as a complete diet for cats.

67. A reasonable consumer purchasing cat food labeled as a complete and balanced diet would not have been aware of, and could not reasonably discover, the risk that the product lacked adequate thiamine.

68. As a direct and proximate result of Defendant's failure to warn, Plaintiff suffered economic injury including purchase price and approximately $3,881.53 in emergency veterinary expenses, and additional out-of-pocket

costs. All Class members suffered the price premium paid for a product they would not have purchased, or would not have paid the same price for, had adequate warnings been provided.

**THIRD CAUSE OF ACTION**

**(Breach of Express Warranty)**

**(On Behalf of Plaintiff and the Nationwide Class)**

69. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Defendant expressly warranted to Plaintiff and Class Members through its product labeling, marketing, and advertising that Quest Cat Food products were "complete and balanced" nutrition for cats and were "formulated to meet the nutritional levels established by AAFCO Cat Food Nutrient Profiles for All Life Stages."

71. These representations were affirmations of fact and promises that became part of the basis of the bargain between Defendant and Plaintiff and Class Members.

72. The eight FDA-tested lots did not conform to Defendant's express warranties. All eight contained thiamine at levels between zero and approximately 15% of of the AAFCO minimum, rendering them incapable of serving as a complete and balanced diet for cats.

73. Plaintiff and Class Members relied on Defendant's express warranties in selecting and purchasing Quest Cat Food products as a complete diet for their cats. Had Plaintiff known the products did not conform to the AAFCO nutritional standards represented by Defendant, she would not have purchased the products, and her cat's hospitalization and the resulting veterinary expenses would have been avoided.

74. Plaintiff purchased the Quest White Fish (Lot C25337) and Quest Pork (Lot C25321) lots in direct reliance on these warranties. As a direct and proximate result of Defendant's breach, Plaintiff suffered economic injury including

purchase price, approximately $3,881.53 in net veterinary expenses, and other out-of-pocket costs. All Class members paid a price premium specifically for the AAFCO-compliant nutritional adequacy warranty, and suffered economic injury when the warranty was breached. Plaintiff and Class Members provided Defendant with reasonable notice of the breach, and any notice requirement is in any event satisfied or excused because Defendant had actual knowledge of the thiamine deficiency through the FDA's laboratory testing, public advisory, and resulting recalls.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability)**

**(On Behalf of Plaintiff and the Nationwide Class and California Subclass)**

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Defendant, as manufacturer, distributor, and seller of Quest Cat Food, impliedly warranted that the products were merchantable and fit for the ordinary purpose for which they were intended—to serve as a safe, complete, and nutritionally adequate diet for cats.

77. Plaintiff purchased Quest Cat Food directly from Defendant through its website and through authorized retailers, establishing the necessary transaction for warranty liability. In the alternative, Plaintiff and Class Members are third-party beneficiaries of Defendant's implied warranties to the retailers who purchased Quest Cat Food for resale to consumers. In the further alternative, the claims of Plaintiff and the California Subclass are brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, which does not require privity for California consumers.

78. The eight FDA-tested lots were not merchantable. As confirmed by FDA laboratory testing, the products contained no or extremely low thiamine,

rendering them nutritionally deficient, dangerous for use as a complete diet, and unfit for the ordinary purpose.

79. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have suffered injury and lost money in amounts to be proven at trial, including the purchase price and price premium paid for products that were unfit for their ordinary purpose.

## FIFTH CAUSE OF ACTION

**(Negligent Misrepresentation)**

**(On Behalf of Plaintiff and the Nationwide Class)**

80. Plaintiff realleges and incorporates by reference all preceding paragraphs.

81. Defendant, as the manufacturer of Quest Cat Food, had a duty to ensure that the representations on its product labels — including the "complete and balanced" and AAFCO nutritional adequacy representations — were accurate before distributing the products to consumers.

82. Defendant negligently represented that Quest Cat Food products met AAFCO nutritional standards when it had failed to adequately test and verify the thiamine content of its products before labeling, distributing, and selling them as nutritionally complete.

83. Plaintiff and Class Members reasonably relied on Defendant's representations in purchasing Quest Cat Food products at a premium price as a complete diet for their cats. As a direct result of Defendant's negligent misrepresentations, Plaintiff and Class Members suffered economic injury including the price premium paid and, for members of the Veterinary Harm Subclass, veterinary expenses and related out-of-pocket costs.

///

///

## SIXTH CAUSE OF ACTION

**(Fraud and Deceit)**

**(On Behalf of Plaintiff and the Nationwide Class)**

84. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. Defendant knowingly and intentionally misrepresented Quest Cat Food products as nutritionally complete and balanced diets meeting AAFCO standards, when Defendant knew or should have known that the products contained inadequate or absent thiamine, rendering them incapable of meeting those standards.

86. Defendant made these misrepresentations on product labels, in marketing materials, and through its website and retail distribution channels, at the point of sale, throughout the applicable class period.

87. Plaintiff and Class Members reasonably relied on Defendant's misrepresentations and omissions in purchasing Quest Cat Food products as a complete diet for their cats and suffered economic injury as a result. As a direct consequence of Plaintiff's reliance on Defendant's fraudulent representations, her cat suffered acute thiamine deficiency necessitating emergency veterinary hospitalization and treatment.

88. Defendant's fraudulent conduct was willful, knowing, and intentional. Defendant was aware that cats consuming a diet deficient in thiamine risk serious neurological harm and death, and yet continued to label, market, and distribute the deficient products as safe and nutritionally complete.

89. As a direct and proximate result of Defendant's fraud, Plaintiff and the Class have suffered injury and lost money in an amount to be proven at trial. Defendant's willful and knowing conduct warrants the imposition of punitive and exemplary damages.

///

///

## SEVENTH CAUSE OF ACTION

**(Violation of Cal. Bus. & Prof. Code §§ 17500 et seq.—False Advertising)**

**(On Behalf of Plaintiff and the California Subclass)**

90. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91. California Business & Professions Code § 17500 prohibits any person from making or disseminating, in any advertising medium, any statement concerning goods that is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

92. Defendant, in connection with the labeling, advertising, and sale of Quest Cat Food products, made and disseminated statements that the products were "complete and balanced" and "formulated to meet the nutritional levels established by AAFCO Cat Food Nutrient Profiles for All Life Stages." These statements appeared on the product label, on Defendant's website, and through retail distribution channels throughout California and the United States.

93. These statements were untrue and misleading. As confirmed by FDA laboratory testing, all eight tested lots of Quest Cat Food contained thiamine at levels ranging from zero to 15.2% of the AAFCO minimum of 5.6 mg/kg. The products were therefore incapable of meeting AAFCO Cat Food Nutrient Profiles for All Life Stages and could not truthfully be represented as complete and balanced diets for cats.

94. Defendant knew, or by the exercise of reasonable care should have known, that these representations were untrue or misleading. Defendant, as the manufacturer of Quest Cat Food, was responsible for the formulation and quality control of its products, including ensuring that its products met the AAFCO nutritional standards it represented on its labeling. Defendant had the means and opportunity to test its products for thiamine adequacy before distributing them to consumers.

95. Defendant's false and misleading advertising directly caused injury to Plaintiff and the California Subclass. Plaintiff and California Subclass members purchased Quest Cat Food in reliance on Defendant's representations that the products were nutritionally complete and balanced, and paid a premium price for what they reasonably believed to be a high-quality, nutritionally adequate diet for their cats. Had Defendant not made these false and misleading statements, Plaintiff and the California Subclass would not have purchased Quest Cat Food, or would not have paid the price charged.

96. As a result of Defendant's violations of Business & Professions Code §§ 17500 et seq., Plaintiff and the California Subclass have suffered injury in fact and lost money or property. Pursuant to Business & Professions Code § 17535, Plaintiff and the California Subclass are entitled to restitution of all monies paid for Quest Cat Food products, injunctive relief prohibiting Defendant from continuing its false and misleading advertising practices, and such other equitable relief as the Court deems appropriate. Plaintiff also seeks attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## EIGHTH CAUSE OF ACTION

**(Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.—Unfair Competition)**

**(On Behalf of Plaintiff and the California Subclass)**

97. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98. California Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising." Defendant's conduct as alleged herein constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of § 17200 and is actionable under each of the three prongs of the UCL.

99. Defendant's conduct is unlawful in that it violates, among other statutes: (a) California Business & Professions Code § 17500, (b) the Consumers Legal

Remedies Act, Civil Code §§ 1750 et seq.; (c) California Health & Safety Code § 113980 et seq. and the Sherman Food, Drug, and Cosmetic Law, which prohibit the manufacture and sale of misbranded and adulterated pet food; and (d) federal regulations governing pet food labeling under 21 C.F.R. §§ 501 et seq., which require that pet food labels not be false or misleading in any particular.

100. Defendant's conduct is unfair in that the harm to Plaintiff and the California Subclass from purchasing nutritionally deficient cat food significantly outweighs any conceivable utility of Defendant's misrepresentations. The harm includes the price premium paid for falsely labeled products and, for members of the Veterinary Harm Subclass, veterinary expenses and harm to companion animals.

101. Defendant's conduct is fraudulent in that Defendant's representations that Quest Cat Food was "complete and balanced" and met AAFCO nutritional standards were false and were likely to deceive members of the public acting reasonably under the circumstances. A significant portion of the general consuming public, acting reasonably, would be deceived by a cat food label stating that the product is "formulated to meet the nutritional levels established by AAFCO Cat Food Nutrient Profiles for All Life Stages" when in fact the product contains no or negligible amounts of a nutritional component essential to feline health.

102. Plaintiff has standing to bring this cause of action under Business & Professions Code § 17204 because she suffered injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent business practices, including the price premium paid for defective products.

103. Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the California Subclass are entitled to restitution of all monies paid for Quest Cat Food products, disgorgement of Defendant's ill-gotten profits, injunctive relief enjoining Defendant from continuing its unlawful, unfair, and fraudulent business practices, and such other equitable relief as the Court deems

appropriate. Plaintiff also seeks attorneys' fees pursuant to California Code of Civil Procedure § 1021.5

**NINTH CAUSE OF ACTION**

**(Unjust Enrichment)**

**(On Behalf of Plaintiff and the Nationwide Class)**

104. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105. Defendant has been unjustly enriched by selling Quest Cat Food products at premium prices, representing them as complete and balanced nutrition for cats, when the products in fact contained inadequate or absent thiamine and were not safe for use as a complete feline diet.

106. Plaintiff and Class Members conferred a benefit on Defendant by purchasing Quest Cat Food products at the prices charged. Defendant accepted and retained these benefits with knowledge that the products were defective and did not conform to the nutritional representations made on the label.

107. Defendant has no right to retain the profits derived from the sale of defective products, and it would be unjust to permit Defendant to benefit from its deception.

108. Plaintiff and the Class are entitled to restitution of the amounts paid for Quest Cat Food products, or in the alternative, the difference between the price paid and the fair market value of the defective products as actually constituted, in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**

**(Violation of the Consumers Legal Remedies Act, Civil Code §§ 1750 et seq.)**

**(On Behalf of Plaintiff and the California Subclass)**

109. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

110. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq., on behalf of Plaintiff and the California Subclass.

111. Plaintiff and California Subclass members are "consumers" within the meaning of Civil Code § 1761(d), in that they are individuals who sought and acquired Quest Cat Food products by purchase for personal, family, or household purposes.

112. Quest Cat Food products are "goods" within the meaning of Civil Code § 1761(a), in that they are tangible chattels bought for personal, family, or household purposes.

113. Defendant's conduct as alleged herein constitutes unlawful methods, acts, and practices in connection with the sale of goods to consumers, in violation of Civil Code § 1770, including specifically:

a. Civil Code § 1770(a)(5)—representing that goods have characteristics, ingredients, uses, or benefits which they do not have, in that Defendant represented Quest Cat Food as nutritionally complete and balanced and as meeting AAFCO Cat Food Nutrient Profiles for All Life Stages, when in fact the products contained no or extremely low thiamine and were incapable of serving as a complete and balanced diet for cats;

b. Civil Code § 1770(a)(7)—representing that goods are of a particular standard, quality, or grade when they are of another, in that Defendant represented Quest Cat Food as meeting the AAFCO minimum thiamine standard of 5.6 mg/kg when FDA laboratory testing confirmed that all eight lots tested contained thiamine at a small fraction of that level or none at all; and,

c. Civil Code § 1770(a)(9)—advertising goods with intent not to sell them as advertised, in that Defendant advertised Quest Cat Food as a complete and

balanced nutritional diet meeting AAFCO standards while distributing products that did not and could not meet those standards.

114. Defendant's representations that Quest Cat Food was "complete and balanced" and "formulated to meet the nutritional levels established by AAFCO Cat Food Nutrient Profiles for All Life Stages" were false, misleading, and likely to deceive a reasonable consumer. Plaintiff and California Subclass members relied on these representations in purchasing Quest Cat Food as a complete diet for their cats.

115. As a direct and proximate result of Defendant's CLRA violations, Plaintiff and California Subclass members suffered injury in fact, including economic loss from the purchase price paid for defective products and, where applicable, veterinary expenses arising from the thiamine deficiency caused by Defendant's products.

116. On June 23, 2026, Plaintiff served written notice on Defendant pursuant to California Civil Code § 1782(a). The notice was delivered on June 29, 2026. The notice identified the particular violations of Civil Code § 1770 alleged herein and demanded that Defendant correct, repair, replace, or otherwise rectify the goods alleged to be in violation. Defendant received the notice on June 29, 2026, and more than thirty days have elapsed since receipt.

117. Defendant did not, within thirty days after receipt of that notice, correct, repair, replace, or otherwise rectify the goods as to Plaintiff or as to the consumers on whose behalf the notice was given. Plaintiff has therefore complied with Civil Code § 1782(a).

118. Pursuant to Civil Code §§ 1780 and 1782(d), and separately pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff amends this complaint to seek actual damages, punitive damages, and restitution under the CLRA, in addition to the injunctive relief originally sought.

119. Plaintiff and the California Subclass are entitled to actual damages pursuant to Civil Code § 1780(a)(1), and in no case shall the total award of damages in this class action be less than one thousand dollars ($1,000); to an order enjoining Defendant's methods, acts, and practices pursuant to § 1780(a)(2); to restitution of property pursuant to § 1780(a)(3); to punitive damages pursuant to § 1780(a)(4); and to any other relief the Court deems proper pursuant to § 1780(a)(5).

120. Plaintiff seeks injunctive relief prohibiting Defendant from continuing to label, market, distribute, or sell Quest Cat Food products as "complete and balanced" or as meeting AAFCO nutritional standards unless and until such products are confirmed to meet those standards, and requiring Defendant to adequately notify all California consumers who purchased Quest Cat Food during the class period of the thiamine deficiency and the associated health risks.

121. Plaintiff also seeks attorneys' fees pursuant to Civil Code § 1780(e), which provides for a mandatory award of attorneys' fees to a prevailing plaintiff in a CLRA action.

122. The venue declaration required by Civil Code § 1780(d) is filed concurrently herewith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. For an order certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

b. For an order appointing Plaintiff as representative of the Classes and appointing her counsel as class counsel;

c. For full restitution of the price premium paid by all Class members for the Products falsely labeled as “complete and balanced” and as meeting AAFCO Cat Food Nutrient Profiles, in an amount to be determined at trial;

d. For disgorgement of all profits obtained by Defendant from the sale of the eight FDA-tested lots of Quest Cat Food, in an amount to be determined at trial;

e. For compensatory damages, including damages for economic loss, veterinary expenses (including emergency hospitalization and treatment), and other out-of-pocket costs for Plaintiff and members of the Veterinary Harm Subclass, in amounts to be determined at trial;

f. For punitive damages against Defendant for its willful, malicious, and oppressive conduct, in an amount to be determined at trial;

g. For actual damages under California Civil Code § 1780(a)(1) on behalf of Plaintiff and the California Subclass, in no event less than one thousand dollars ($1,000);

h. For an order enjoining the methods, acts, or practicesunder California Civil Code § 1780(a)(3) on behalf of Plaintiff and the California Subclass;

i. For restitution of property under California Civil Code § 1780(a)(3) on behalf of Plaintiff and the California Subclass;

j. For punitive damages under California Civil Code § 1780(a)(4) on behalf of Plaintiff and the California Subclass;

k. For an award of attorney's fees and costs to Plaintiff as a prevailing plaintiff pursuant to California Civil Code § 1780(e);

l. For prejudgment interest on all monetary awards at the legal rate;

m. For declaratory relief, declaring that Defendant's labeling, marketing, and sales of the eight FDA-tested lots of Quest Cat Food products as complete and balanced nutrition was unlawful;

n. For injunctive relief, including an order enjoining Defendant from manufacturing, distributing, or selling any cat food product as complete and balanced unless and until it has been confirmed to meet AAFCO nutritional

requirements, and requiring adequate notification to who purchased the eight FDA-tested lots;

o. For reasonable attorneys' fees according to proof pursuant to applicable law;

p. For costs of suit incurred; and

q. For such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

DATED: September 3, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Katherine Tuohy*
Katherine A. Tuohy
Katherine@SwigartLawGroup.com
Joshua B. Swigart
Josh@SwigartLawGroup.com
*Attorneys for Plaintiff*

DATED: September 3, 2026

**SHAY LEGAL, APC**

By: *s/ Daniel G. Shay*
Daniel G. Shay
Dan@ShayLegal.com
Harrison J. Lynch
Harrison@ShayLegal.com
*Attorneys for Plaintiff*